Case No. 17-5142 et al., United States Department of Treasury, Appellant v. Dennis Black et al., Mr. Stern for the Appellant, Mr. Kalia for the Appellant. Good morning. Good morning, Your Honors. May it please the Court, at issue, as the Court knows, are 63 documents as to which the District Court in this case found to be covered by the Presidential Communications Privilege. And on appeal, the question is whether the Court erred in concluding that the respondents had demonstrated that their need for these documents outweighed the principles that protect the Presidential Communications Privilege. Now, at this point, respondents have received about a million pages of discovery from the Pension Benefit Guarantee Corporation, which is the actual defendant in this case. They have obtained approximately 70,000 pages from Treasury, including the documents over which Treasury had claimed deliberative process privilege. And the only ones that we are contesting are those last 63, which is more like 20, because the number of the documents are duplicative. What is the finding the appellate judge has to make in order to overcome the privilege? The Court has to, at a minimum, find that the requirements of the Enraged Sealed case are met. Now, the District Court said that, but, I mean... Is there enough in the record here for us to review his finding on that? Should we remand it for him to give us a more well-developed record? I think that the Court could do one of two things. One of them is what Your Honor suggests, and the Court could remand with instructions to actually do what Enraged Sealed case requires. And, alternatively, we think that the record is such that it's claimed that plaintiffs have not made their showing. This Court, I believe, has... What's the showing they need to make? Well, the showing that they need to make is that there is information that is important to their underlying claim, and that the information cannot be... Is it your contention they haven't made that showing? Absolutely, Your Honor. And that's why I was emphasizing the amount of discovery that's been obtained already. And, at this point, to come in to try and overcome the presidential communications privilege, as the District Court found it does apply, one would expect that there be some reasonably specific explanation of what it is that's been found to date that makes it likely that there will be documents among these documents that will actually fit into a case and provide some reasonably specific explanation of how this really works in terms of the theory of the case. Now, up to now, as far as one can tell, I don't mean this in a negative way, but it really... I mean, I just don't want to sound negative. This really is a fishing expedition at this point. We don't have anything whatsoever to make one believe that it is likely that among these documents is something that will fit, even into the very sort of generalized way that plaintiffs have characterized what their claim in the underlying case is. If we disagreed with you on the need showing, is that the end of your argument? I mean, I don't really know how to totally answer that, because the business about finding it alternatively, one of the difficulties is that their argument for why they need this and why it's not available alternatively sort of tend to some extent blend together. But without knowing why they need it, it's very hard to explain why it's not available elsewhere. What is clear is that to the extent that they're saying... I mean, when we look at... I mean, what they're trying to prove in Michigan, in this count four of their complaint, is that had the... Had there been a judicial hearing on the termination that the put of PBTC's decision to terminate would have met statutory criteria. So that's, in some way, that's what this is all about. At this point, and there's sort of a generalized statement that, well, maybe there was some sort of improper political influence, but we don't have anything to demonstrate that. To the extent that what they're saying is, well, maybe there were things that... There were options that PM could have considered, but there were other ways. I mean, is there a different balancing that's to take place when we're in a civil procedure, civil litigation, as opposed to, you know, a sealed case was a criminal matter, a Nixon tapes case was a criminal matter. How is the district court or how are we supposed to balance the interest when it's a civil litigation? I think what the Supreme Court's Cheney decision strongly indicates, and it's basing... You know, it goes back to Nixon, that in... And this was important, I think, in Ray's sealed case, too, that there is a greater interest in disclosure in the context of a criminal case because of the interests of the criminal justice system, so that there is a competing constitutional concern that's in the balance. And... Now, remind me, was that discussed in the district court analysis? In the district, no. I mean, and the... So if... I mean, we think that under any standard, you know, whether it's like a, you know, in Ray's sealed case standard, you know, or what we think should be sort of like a heightened standard beyond in Ray's sealed case, it doesn't matter here because in this case, if anybody can come in and say, I want presidential communications privileges because they might sort of provide something for a lawsuit. Like maybe they've got something that shows something improper. And this is after they've gotten all the documents from the actual defendant. So it's got to be something that never went anywhere else. It's not, you know, like it never went to PBGC. You know, and remember, there have been, like, IG reports looking into this. There's nothing in all of this that would point to the idea that they've made a showing that there is likely to be anything. And it also, to the extent that the court has, you know, like any additional concerns, I really would welcome, you know, ask the court to look at the documents as the district court did. And the district court said, I'm fine that the privileges outweighed for substantially the reasons offered by plaintiffs. And our suspicion is that that's just not good enough. And even if the court simply, you know, wants to remand, it's got to be that the district courts in the circuit have got to take the presidential communications privilege more seriously than that. Because otherwise, it's really going to be a meaningless privilege. And we're really hoping that the court in this case will provide some guidance, whether it disposes of the case itself or remands. Thank you very much. Thank you.  Good morning. Good morning. Could you start with, my question is whether the district court, in fact, used the wrong standard here by failing to analyze this as a civil litigation matter, not a criminal matter. Isn't there a very, much more difficult to get presidential communications privilege pierced in a civil matter, right, than as opposed to a criminal? And it doesn't seem to me that the district court took that into account at all. Am I reading him wrong? Your Honor, we think the district court did take it into account. The court applied the standards in In Re Sealed case, but also in Dellums. Dellums was a civil case. And in the court's opinion in In Re Sealed, the court noted that in Dellums and in the court of federal claims in the Sun Oil case have found that the evidentiary demands in a civil context can overcome the presidential communications privilege. It is not wrong to say that the interest in disclosure is less in the civil context than the criminal context. That's true. But as the court has pointed out, there's a whole host of balancing factors that come into account. Did the court do an adequate record balancing here for us to review? Your Honor, I think it did. What's his best statement as to why you have the need element, for example? Certainly. Well, quote it to me, or give me a good paraphrase of it. Sure. So the district court said, looked at the briefing that was before it on the motion to compel. We had about eight pages of analysis on what the standard should be. We talked about the difference in And all he did was say, well, for the reasons stated by the He said that he summarized it by saying, well, these He didn't just summarize, that's all he said, wasn't it? Well, respectfully, Your Honor, he said that the documents in question could likely go to show whether the PVGC was improperly influenced by the Treasury. And then he said, he specifically quoted to a page of our brief. And then in response, what he had and what he noted was that the Treasury offered three paragraphs in opposition, did not contest that these documents were unavailable from any other source, did not let the court of first instance know that that was a subject that was in dispute. And then if you look, this is the record that was before the court, in this case, was developed over five years. And the record was not lacking in evidence to support Judge Sullivan's determination here. He had evidence before him that showed that the Treasury was involved in daily briefing calls on Delphi issues. He had evidence that showed that the PVGC, prior to the involvement of the auto task force, was actively working to use its liens and claims on Delphi assets to get GM to reassume this plan. This had originally been a GM plan. These participants that were in this plan were all originally GM employees, spent their careers working for General Motors. It was undisputed that GM depended on the ability of Delphi parts to make its cars, that the threat of those PVGC liens was a significant, critical threat to the Obama administration's hope of a reemergent GM. And upon the emergence of the auto task force and the Treasury negotiating on behalf of GM, that advocacy stopped overnight. And Mr. Stern referenced the SIGTARP report. The SIGTARP report showed clearly that the Treasury was a driving force. I think SIGTARP testified to Congress that it was no question that the Treasury was deeply or closely involved in Delphi pension issues. This record was substantial, and the Court's decision in the In Re Sealed case makes clear that judicial deference to district court findings on things like a need and availability is appropriate unless you have no explanation whatsoever of the Court's legal reasoning. And here there is explanation of it. And as far as whether it is insufficient to just simply refer to sort of incorporate the respondent's reasons for the need, as opposed to cutting and pasting those reasons and putting it in the opinion, I'd point out that this Court, just on Tuesday, issued an en banc opinion. It used the same mechanism. It said that we, for substantially the same reasons cited in an opinion, a dissenting opinion from earlier, from the previous week, we reversed the order. And there's nothing wrong with that. That judicial economy is served by that. There's no – it's not hard to figure out what the district court was thinking. You just have to look at a separate document. You just have to go and look at the briefs, which, again, are voluminous. And as far as the – That's the problem. The briefs are voluminous. And it's not quickly possible to take it and look back at a brief document, as was the case in the en banc you're referring to on Tuesday, that one of the people on the bench participated in, the other two didn't. In any event, it's rather difficult to incorporate a small document, straightforward, and a long set of briefing and expect us to go back and sort out what he was getting at, isn't it? Well, it is a little different. But, again, in the context here where the Treasury's burden is to demonstrate an abuse of discretion, and you've – I mean, we, again, the district court judge had five years of briefing, 23 substantive briefs that went to issues including standing and relevance and the burdensomeness of the subpoena. It had multiple in-camera reviews of these documents. It had hearings, two hearings. And he had done everything he needed to do, but did he pay for it the way he had to for us to review it? Well, think about the city of Bessemer in the Supreme Court, where the Fourth Circuit had said they didn't have to defer to a judge's findings  which said, yes, you do. But in that case, Judge McMillan had detailed the findings from the – he requested the plaintiffs to draw the findings, but he did detail them and set them forth instead of just saying, well, but for the reasons they want, we're doing it. Similarly, and I know this is not a FOIA case, but it's the same kind of thing. There's a Summers case in this court. I don't have the full name in front of me. But where we said that although on a summary judgment, the rules do not require the district court to make findings and conclusions on such things as FOIA, where it's fact-intense in the interest of judicial economy, the district judge should make findings or at least set forth – can't make findings in summary judgment, particularly set forth the facts that he finds are undisputed, conclusions are undisputed and the conclusions thereon, rather than three chambers have to search through it to review. Wouldn't that be instructive on this case? Well, it might be instructive, Your Honor. I don't disagree. But, again, the context matters here. This is not an issue where the judge just flippantly said, well, you know, I'm just going to take a look at these documents and I don't care about presidential privilege. To the contrary. Again, he had this subpoena served in 2012. Five years he afforded the Treasury multiple opportunities to supplement its privilege assertions. The dilutive process assertions that were made, initially there were something like 900 assertions made. The district court found that they were all miserably deficient were his words. And similarly, the Treasury was afforded multiple opportunities to supplement these assertions of presidential communications privilege. He did accommodate that concern. He found that the privilege applied, but then in a very narrow order, ordered that they would only be disclosed pursuant to protective order. I mean, you have to, again, ask what is the threat to presidential confidentiality here, let alone the fact that the subject matter of these are aged documents, which... Can I go back? Dellums was different, wasn't it? Dellums, you had the former president wasn't assuring the privileges to the current, right? And so isn't the case for the presidential privilege much stronger here, where you have the former president and the current president both unitedly saying no? I don't know how much Dellums helps you. Well, first, Your Honor, I would say that it's not clear from the record that either President Obama or President Trump have asserted the privilege. The office of the president is said to assert the privilege. It's not clear who is making that assertion on behalf of the current office of the president. We have a letter in the record from the Department of Justice. But if you look at what... What would you require beyond that? The Justice Department is here saying the executive branch has asserted, the president has asserted with the office of the president? Are you looking for a tweet? That might be instructive, Your Honor. The previous case, as we noted in our briefs, there's, starting with Chief Justice Marshall in the Burr case, he noted that this was a privilege that because of the nature of the privilege, it was something that was unique to the president and could not be delegated to someone else. It had to be asserted by the president. He can't be deferring to someone else's judgment. It has to be in his judgment that the privilege is asserted. We have the court in the Ray Seald case notes that it's an open question whether the president personally has to sign a letter that says he's asserting the privilege or whether someone on his behalf can say, oh, I've consulted the president, and here's what he wants me to do. Here we have neither of those factors. Here we have, and this is an expansion of what has previously been recognized, that currently what's in the record is a Department of Justice attorney has asserted that the government continues to assert the privilege on behalf of the office of the president, but it does not say who has authorized the Department of Justice to make that determination. Now, that may seem like hair splitting, but in terms of It does. It does seem like hair splitting. But in terms of if the argument is that there are constitutional, strong constitutional imperatives that require these documents not be shown to anyone else outside the executive, the court's precedent suggests that that hair splitting matters because this is a constitutional power that belongs to the president. Now, we're not saying that you should overturn the finding that the presidential communications privilege applies. We're just saying if you're going to engage in a new round of balancing, we don't think you should, but if you're going to and you're going to say, well, Dellum's a little bit different because you need to look at the interest in confidentiality there. Well, there are a whole host of factors like the age of the documents, like the nature of the documents. These are not revealing the plans for dealing with ISIS or anything. These are eight-year-old documents that talk about how the government was going to restructure General Motors. Can I back you up a minute? We used to have a practice in this court when we affirmed district judges who had written opinions. They're not always required. In summary judgment, there's no requirement that a district court write. But we would affirm, and the language that was used was substantially for the reasons given by the district court. And we discontinued that practice because it became clear that our affirmance would have precedential effect, but anybody reading that language wouldn't know exactly what part of the district court's opinion that we were agreeing with or refusing to agree with. Here, as I recall, the district judge didn't say for the reasons given by you. It said substantially for the reasons given by you. Now, how do we know what reasons that you gave were persuasive to the district court, given that language? I think that you raise a good point, Judge Randolph. It is difficult to ascertain precisely which reasons are persuasive. But, again, on an abuse of discretion standard, it is where the Treasury really did not contest it. We thought it was an abuse of our discretion to affirm a district court substantially for the reasons. Why isn't it an abuse of discretion for the district court in this case to use the same language in terms of the presentation of counsel? Well, I guess it didn't only say substantially for the reasons that the respondents make. It said the court finds that these documents are likely to contain evidence that would go to a core issue in the Michigan litigation. Substantially for the reasons that the proponents of the discovery have stated. It incorporated, it certainly incorporated our reasoning rather than rearticulating it, but it did make clear what its reason was. And I'm inspired. Thank you. Thank you very much. I'll be very brief. The substantially for the reasons language appears at the April opinion at page 11. That's what the court said, is substantially for the reasons. And we really don't know what reasons those are. And the district court found this for a blanket matter for all 63 documents, not even for a subset of the documents. And note that the only discussion of how all this sort of connects up to any prior showing to make this seem like anything other than a wishful request that who knows what will turn up is a footnote for a plaintiff's, a respondent's brief. That's the entire discussion. We responded to it in a reply brief. But the fact that even if we never responded to it, to try to overcome the presidential communications privilege on the basis of a footnote, just think really just destroys the privilege. Is there, did you address your friend's comment about that the presidential executive privilege has not been, or presidential communication privilege has not been asserted by the Obama administration and by President Obama and President Trump? Well, I mean, there were two. What's necessary. I mean, to the extent that the council concedes that it was proper, I mean, that the, just doesn't challenge the fact that the district court correctly found that the presidential communications privilege applies. That's not, so there's no part of it. His answer was in response to my questioning about distinguishing this case from Dellums. I mean, one of the factors I thought was if you have past presidents who are exerting the privilege as well, that that's a factor to take into account. I think that's how that arises. That's right, Your Honor. But the key point there is in Dellums, it was only asserted by a president who had already left office. And this court said it wasn't even clear whether that really was appropriate, but like litigated, you know, but then proceeded to decide the case on that assumption. And what the court said was that it was an institutional privilege, which is why it cast doubt on the ability of a president of a privilege when it had never been asserted by the White House. It was asserted by the White House. We are here defending it. I don't think that the White House needed to file a new declaration saying that, by the way, this litigation is ongoing. We're represented by the Justice Department, but we want to just make clear to the court that we mean that. Okay. Thank you. The case is submitted.
judges: Griffith, Sentelle, Randolph